# City of Hazard et al. v. Collins.

March 28, 1947.

S. M. Ward, Judge.

W. E. Faulkner for appellants.

Don A. Ward and D. G. Boleyn for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

The question presented on this appeal is whether or not the City of Hazard, a fourth class city with a commission form of government, could adopt a building code (hereinafter referred to as the Code) of 300 pages merely by referring to such Code in an ordinance duly passed, recorded and published. The chancellor held that such reference did not make the Code a part of the law of the city, and it appeals.

The title of the ordinance is in due form and it ordained in paragraph one: "That the Southern Standard Building Code, 1946-1947 Edition adopted by the Southern Building Code Congress at its annual convention November 16, 1945, be and the same is hereby adopted by the City of Hazard, subject to the changes set forth in this Ordinance."

The second paragraph authorizes the city manager to administer the Code. The third paragraph of the ordinance amended sec. 114 of the Code by reducing the penalty upon a conviction for violating its provisions. The fourth paragraph established two fire districts.

The petition averred that the Code was never read before being voted on and was never recorded in the office of the city clerk, nor was it published. The truth of these averments was proved—indeed, the city admits their truth in its brief. However, the proof shows that several copies of this Code (which is in the form of a permanently bound book containing 300 pages) were left in the office of the city clerk for the use of the public. It is insisted that as the commissioners were familiar with its contents, it was not necessary that the Code be formally read before being adopted as an ordinance of the city. It is further urged that as the Code was in book form it became itself an ordinance book, thereby obviating the necessity of spreading it upon the records of the city, as required by KRS 89.540. Furthermore, it is insisted that the publication of the book was in effect a publication of the ordinance. But KRS 86.090(4) requires that fourth class cities publish ordinances in a newspaper published in the city, or by handbills, before the ordinances are enforced. It is provided in KRS 89.400 that all laws applicable to and governing cities of the second, third and fourth classes, and not inconsistent with the provisions relating to a commission form of government, remain in force when a city of one of these classes is organized under the commission form. An ordinance of a fourth class city by KRS 89.540 is required to be reduced to writing and read before a vote is taken, and after passage it must be signed by the mayor and recorded before taking effect. As no part of KRS 89.540 is inconsistent with KRS 86.090, we hold that the latter section applies to fourth class cities un-

der a commission form of government and that their ordinances must be published before being enforced.

The city relies upon 2 McQuillin's Municipal Corporations, 2d Ed., sec. 731, p. 804, and Town of Kevil v. Hawthorne, 205 Ky. 426, 265 S. W. 937, in support of its position that irregularities in the recording of an ordinance are not fatal to its validity and that courts are liberal in their construction as to what constitutes a sufficient recordation. That is the correct rule. But here, there were no irregularities in recording the Code —it just was not recorded. In the Kevil case we held that where the ordinance book had been filled and there was no room to record the ordinance, that a filing of the ordinance in the book was a sufficient recordation of it. The opinion said that this was a loose practice but that the same strictness is not required of a sixth class city like Kevil as of a larger city having greater facilities for the making and protection of records.

Counsel have cited no case from this jurisdiction directly in point and we have found none. But we have found a Michigan case which appears to have dealt with the same situation now confronting us. In L. A. Thompson Scenic Railway Co. v. McCabe, 211 Mich. 133, 178 N. W. 662, 664, a building code of 156 pages had been filed with the city clerk and it was contended that the city could adopt that code by a reference to its several articles in an ordinance duly passed. It was there held that the filing of the code in the office of the city clerk did not make it a public record, but that it was "a fugitive paper 'in the custody of the city clerk,'" which could not be converted into a law of the city without publishing the code and only referring to it in a duly enacted ordinance. It was there argued that to publish the code would cost the city $8,000 in printers' fees and would serve no useful purpose. The court answered that argument by saying that citizens who are held accountable for violations of the provisions of an ordinance are entitled to have notice of its enactment which the law requires. The building code there, as the one here, contained a penalty and the court there wrote that the expense connected with its publication would not be considered.

In the City of Tucson v. Stewart, 45 Ariz. 36, 40 P.

2d 72, 96 A. L. R. 1492, it was held that an electrical code could be adopted by reference in an ordinance without publishing it where the code by a resolution has been approved by the mayor and council of the city and lodged with the proper custodian. The Tucson case discusses L. A. Thompson Scenic R. Co. v. McCabe, 211 Mich. 133, 178 N. W. 662, and points out that in the latter the building code had not been made a part of the public records of the City of Detroit, therefore it could not be adopted as a part of the law of that city by mere reference made to it in an ordinance duly passed. While in the Tucson case the electrical code previously had been approved by the mayor and council by a resolution and had been lodged with the proper custodian.

Here, as in L. A. Thompson Scenic R. Co. v. McCabe, 211 Mich. 133, 178 N. W. 662, the Code had not been made a part of the public records of the City of Hazard by merely leaving several copies of it in book form in the office of the city clerk, and the City of Hazard could not make the Code a binding law on its citizens by referring to it in an ordinance duly passed. We do not hold that a fourth class city cannot adopt a building code or a health or a safety regulation as a part of its law by reference in a duly passed ordinance without publishing and spreading such code or regulation on the ordinance book, as is required by statutes. But we do say that before such a document may be adopted by reference in an ordinance, that the document must first be read and approved by the law making body of the city in a formal session by a resolution duly passed and recorded showing that such action has been taken. If this is done and the document thus made a part of the public records of the city, we see no reason why it cannot be enacted into law by reference in a duly passed and published ordinance without spreading the document itself on the ordinance book as required by KRS 89.540 or by publishing it in conformity with KRS 86.090.

The Code before us in this case is not merely a building code but is drawn in the form of an ordinance and shows that it was prepared with the intention that it should be passed as a city ordinance just as any other ordinance must be enacted. It starts thus:

"Section 101—Title and Scope

"101.1—Title

"This ordinance shall be known and may be cited as 'The Building Code,' hereinafter referred to as 'this code.' "

It is a complete ordinance wherein section 114 thereof provides that its violation constitutes a misdemeanor and fixes the penalty therefor as high as a fine of $500 or imprisonment not exceeding six months, or both such fine and imprisonment. As stated above, the ordinance wherein the Code was attempted to be adopted amended this section and greatly reduced the penalty. Since this particular Code is in the form of an ordinance it can only become a law of the city when passed as any other ordinance is required to be enacted by a fourth class city.

Much is said in brief as to whether or not it is wise or practical for a fourth class city to adopt this Code. But we are not concerned with this question—that rests entirely with the law making body of the city. Courts are interested only in the validity and interpretation of legislation and not in whether it is wise or appropriate. Johnson v. Com., 291 Ky. 829, 165 S. W. 2d 820.

The chancellor was correct in enjoining the city from enforcing this Code and his judgment is affirmed.